UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VALERIA BENITEZ BAUTISTA, GUILLERMO GABRIEL NIETO, and JAIME ANTONIO FRIAS, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2348-B |
| KENNETH T. CUCCINELLI, *in his official capacity as Acting Director of U.S. Citizenship and Immigration Services,* and U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss (Doc. 9) filed by Defendants U.S. Citizenship and Immigration Services ("USCIS") and Kenneth T. Cuccinelli in his official capacity as Acting Director of USCIS. For the reasons that follow, the Court finds that Plaintiffs' claims are ripe and that the Court has jurisdiction over this case. Accordingly, the Court **DENIES** Defendants' motion to dismiss.

**I.**

**BACKGROUND**[1]

A. *USCIS's Use of Lockboxes*

In recent years, "USCIS has been moving the initial filing and processing of certain case types

---

[1] The Court draws the facts from Plaintiffs' complaint, the parties' briefing, and the exhibits submitted therewith. The relevant facts are largely undisputed.

- 1 -

from agency service centers to lockbox facilities[.]" Doc. 9, Defs.' Mot., 3 (citing Austin T. Fragomen, Jr., et al., *Immigration Procedures Handbook* § 23:5 (2020)). These "lockboxes," operated by third-party contractors, review USCIS applications and "determine whether they should be rejected for administrative reasons." *Id.* (quotation marks and citation omitted). "Upon receipt, lockbox staff verifies the petition is signed, and has the correct fee included." *Id.* (quotation marks and citation omitted). "If the form is signed and includes the correct fee, a lockbox staffer assigns the petition a file number, enters the case into national and local file-tracking systems, and forwards the petition to an appropriate USCIS division." *Id.* at 4 (quotation marks and citation omitted). Conversely, if the lockbox staff determines that the correct fee was not included, "the petitions [are] returned to the petitioner." Doc. 10, Defs.' App., 2.

The USCIS utilizes lockboxes for the initial processing of two "applications related to [the] adjustment of status to [lawful permanent resident]": (1) Form I-130, Petition for Alien Relative ("Form I-130"); and (2) Form I-485, Application to Register Permanent Residence ("Form I-485"). *See id.* at 1. Lockboxes also process Form I-765, Application for Employment Authorization ("Form I-765"). *Id.* USCIS requires the filing fees for these forms to "be made in exact amounts" and "in one form." *Id.* at 2. Payments made in multiple forms are therefore rejected by the lockboxes and returned to the petitioner. *Id.* For example, "if the filing fee is $1,100, a single form of payment should accompany the application for the exact amount. And a series of money orders (e.g., for $100, $200, $300, and $500) would constitute mixed forms of payment and would be rejected." *Id.* at 2–3. The filing fee for a Form I-130 is $535. Doc. 1-8, Form I-130 Instructions, 9. Form I-485 requires a filing fee of $1,140 and an additional "biometrics services fee" of $85 for applicants between the ages of 14 and 78, for a total of $1,225. Doc. 1-7, Form I-485 Instructions, 17. Form I-765 does not

require a filing fee if filed concurrently with a Form I-485. Doc. 1-9, Form I-765 Instructions, 23–24. USCIS claims to "provide[] extensive guidance to applicants and their attorneys about calculating the filing fees and making payment." Doc. 9, Defs.' Mot., 4. For example, the forms instruct applicants that they "must submit all fees in exact amounts." *See, e.g.*, Doc. 1-7, Form I-485 Instructions, 18. Additionally, the USCIS website states that USCIS "will reject your entire package if you submit . . . [a] mix of money orders . . . . " Doc. 10, Defs.' App., 6. Once a lockbox facility determines that a form is signed and contains the correct amount and type of fee, it forwards it to USCIS for adjudication. Doc. 9, Defs.' Mot., 4.

B.  *The Public Charge Rule*

In deciding whether to grant a Form I-485, USCIS considers the "Public Charge" rule, which makes "[a]ny alien who . . . is likely at any time to become a public charge . . . inadmissible" for "admission or adjustment of status[.]" 8 U.S.C. § 1182(a)(4). The U.S. Department of Homeland Security ("DHS") promulgates regulations and standards to implement the Public Charge rule. *See* 6 U.S.C. § 112; 8 U.S.C. § 1103. DHS implemented changes to the Public Charge rule to take effect on February 24, 2020, which Plaintiffs describe as applying "new, more rigorous adjudicatory standards" for admissibility. *See* Inadmissibility on Public Charge Grounds ("The Rule"), 84 Fed. Reg. 41292 (Aug. 14, 2019); Doc. 1, Compl., ¶ 40. For example, the new Public Charge rule requires applicants seeking an adjustment of residency status to prove by a preponderance of the evidence that they will not be likely to receive "one or more public benefits for more than 12 months in the aggregate in any 36-month period[.]" The Rule, 84 Fed. Reg. 41292, 41297, 41397. It also requires a Form I-485 to be accompanied by a new Form I-944, Declaration of Self-Sufficiency ("Form I-944"), which instructs that USCIS will now evaluate whether an applicant is likely to become a

public charge by weighing all factors such as the applicant's "age, health, family status, assets, resources, and financial status, education and skills, prospective immigration status and period of stay." Doc. 1-13, Form I-944 Instructions, 1; *see* The Rule, 84 Fed. Reg. 41292, 41295.

In light of the new Public Charge rule, USCIS published guidance on its implementation and effect. *See generally* Doc. 1-11, Guidance. In the guidance, USCIS states that it "will apply the [new Public Charge rule] to all applications and petitions postmarked . . . on or after" February 24, 2020. *Id.* at 2. Applications postmarked on or before February 23, 2020, would therefore be adjudicated under the old Public Charge rule.

C.   *Plaintiffs' Applications*

Plaintiff Jaime Antonio Frias ("Frias") is a citizen of the United States residing in Dallas, Texas. Doc. 1, Compl., ¶ 9. Frias's mother, Plaintiff Valeria Benitez Bautista ("Benitez") is a citizen of Mexico but resides in Dallas, Texas. *Id.* ¶ 7. Plaintiff Guillermo Gabriel Neito ("Nieto")—Benitez's husband and Frias's stepfather—is a citizen of Argentina but also resides in Dallas, Texas. *Id.* ¶ 8.

Upon reaching the age of twenty-one, Frias became eligible to petition to classify Benitez and Nieto as his immediate relatives by filing a Form I-130. *Id.* ¶¶ 27–28 (citing 8 U.S.C. § 1151(b)(2)(A)(i); 8 U.S.C. § 1154(a)(1)(A)(i)). Such classification permits Benitez and Nieto to each file a Form I-485 and petition to obtain lawful resident status, as well as a Form I-765 to obtain employment authorization. *See id.* ¶ 31.

On February 22, 2020, Frias, Benitez, and Nieto concurrently submitted their Forms I-485, I-130, and I-765 in the same envelope, as permitted by USCIS. *Id.* ¶¶ 17, 30. In their envelope, Plaintiffs provided filing fees. *Id.* ¶ 31. However, instead of including one money order in the amount of $1,225 for each Form I-485, Plaintiffs submitted two money orders per form, in the amounts of

$1000 and $225. *See* Doc. 1-18, First Application, 6–7.

On or about March 10, 2020, Plaintiffs received "Rejection Notice" letters from USCIS, notifying Plaintiffs that each of their forms were rejected. Doc. 1-19, First Rejection Notices, 1–8. The rejection notices indicate that the forms were rejected because Plaintiffs' "application/packets cannot contain a mix of . . . money order[s.]'" *Id.* at 4.

Plaintiffs resubmitted their forms to USCIS two additional times, and their forms were rejected each time. Doc. 1, Compl., ¶¶ 36–39. The second submission was rejected, like the first, for improper form of payment. *Id.* ¶ 37. The third attempt was rejected on April 20, 2020, because Plaintiffs filed "outdated version[s] of" Form I-485 rather than the updated versions as required by the new Public Charge Rule. Doc. 1-21, Third Rejection Notices, 3, 9.

On August 19, 2020, Plaintiffs filed a complaint in this Court against USCIS and Cuccinelli, challenging the USCIS's rejection of, and refusal to adjudicate, Plaintiffs' forms as arbitrary and capricious, and in violation of the Administrative Procedure Act ("APA"). Doc. 1, Compl., ¶¶ 56–71. Their complaint also seeks, among other things, relief under the Mandamus Act in the form of an order compelling USCIS to adjudicate Plaintiffs' forms under the old Public Charge rule. *Id.* at 20 ¶ 3. On November 10, 2020, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that the case is unripe, and the Court lacks jurisdiction. Doc. 9, Defs.' Mot., 6–7.

## II.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). For that reason, they can adjudicate claims only when subject matter

jurisdiction is expressly conferred by the Constitution and federal statute. *Id.* "Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which" a party may challenge federal jurisdiction. *Armstrong v. Tygart*, 886 F. Supp. 2d 572, 584 (W.D. Tex. 2012) (citations omitted).

"A Rule 12(b)(1) motion can mount either a facial or factual challenge." *MacKenzie v. Castro*, 2016 WL 3906084, at *2 (N.D. Tex. July 19, 2016). A facial challenge occurs "when a party files a Rule 12(b)(1) motion without including evidence." *Id.* A factual challenge, by contrast, occurs when a party supports its Rule 12(b)(1) motion with evidence. *Id.*

In both cases, the burden of proof "is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Yet that is no high bar: "[I]t is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Santerre v. AGIP Petrol. Co.*, 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999) (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260 (11th Cir. 1997)).

In reviewing a facial challenge, courts consider just "the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). But this is a factual challenge. Plaintiffs enjoy no presumption of truthfulness here. *See Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). Instead, they must "prove subject matter jurisdiction by a preponderance of the evidence." *MacKenzie*, 2016 WL 3906084, at *2 (citing *Paterson*, 644 F.2d at 523). To that end, each party may submit affidavits, testimony, and other evidentiary materials in support of their positions. *Paterson*, 644 F.3d at 523.

## III.

## ANALYSIS

Defendants challenge the Court's jurisdiction over this case on two grounds: First,

Defendants argue that the APA does not grant jurisdiction because the lockbox's rejection of Plaintiffs' applications did not constitute a "final agency action." Doc. 9, Defs.' Mot., 6. Second, Defendants argue that the case is not otherwise ripe for judicial review. *Id.* at 7. The Court rejects both arguments and finds that it has jurisdiction over this case.

A.  *The Lockbox's Rejection Was a Final Agency Action.*

Section 704 of the APA grants district courts jurisdiction to review "final agency action[s] for which there [are] no other adequate remed[ies.]" 5 U.S.C. § 704. A "final agency action" under the APA is "an action that (1) marks the consummation of the agency's decisionmaking process and (2) by which rights or obligations have been determined, or from which legal consequences will flow." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (cleaned up) (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). "The Supreme Court has long taken a pragmatic approach to finality, viewing the APA's finality requirement as flexible." *Id.* (cleaned up) (citations omitted). And there is a "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action[.]" *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991). Such a presumption is only rebutted by clear and convincing evidence of congressional intent to preclude judicial review. *Aparicio v. Blakeway*, 302 F.3d 437, 444–45 (5th Cir. 2002) (quoting *McNary*, 498 U.S. at 496).

USCIS argues that this Court lacks jurisdiction because "[a] lockbox rejecting an application for purely administrative reasons is not a 'final agency action.'" Doc. 9, Defs.' Mot., 6. According to USCIS, the lockbox's decision to reject Plaintiffs' applications "for incorrectly paid filing fees meets neither" requirement for final agency action. *Id.* (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). First, USCIS asserts that this decision "does not mark the consummation of the agency's

decisionmaking" because "it expressly anticipates the necessity of further agency action before the application[s] [are] approved or denied." *Id.* (quotation marks omitted) (quoting *Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 582 (5th Cir. 2016)). Second, USCIS argues that "legal consequences do not flow until USCIS receives the application package and adjudicates it." *Id.* (citation omitted). In other words, USCIS argues that the Court may not review its decision to reject Plaintiffs' applications based on "incorrectly paid filing fees" because USCIS has not yet rejected Plaintiffs' applications on the merits. *See id.*

However, the decision to reject Plaintiffs' applications does mark the consummation of USCIS's decisionmaking process, as Plaintiffs' applications were outright rejected. *See* Doc. 1, Compl. ¶¶ 34–39. Regardless of USCIS's argument that Plaintiffs "may simply refile the application[s] with the correct payment," those applications are no longer pending and USCIS will not make further decisions regarding those applications. *See* Doc. 9, Def.'s Mot., 7.

Further, legal consequences flow from USCIS's decision to reject Plaintiffs' applications through its lockbox policy. *See EEOC*, 933 F.3d at 441. Not only does the lockbox's rejection mean that Plaintiffs' initial applications will not be reviewed by USCIS, it also means that any "refiled" applications will be subject to the new Public Charge rule, which took effect on February 24, 2020, as an application "which is rejected will not retain a filing date." 8 C.F.R. § 103.2(a)(7)(ii). And "actions that retract an agency's discretion to adopt a different view of the law are binding . . . and create[] rights or obligations." *EEOC*, 933 F.3d at 442 (quotation marks omitted) (quoting *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015)). In other words, "where agency action withdraws an entity's previously-held discretion, that action alters the legal regime, binds the entity, and thus qualifies as final agency action." *Id.* (quotation marks and citation omitted). "What matters is

whether the [agency's action] has a practical binding effect" on Plaintiffs' legal interests. *Id.* (quotation marks omitted). USCIS must adjudicate applications postmarked on or after February 24, 2020, under the new Public Charge rule. *See* Doc. 1-11, Guidance, 2. Because Plaintiffs' original petitions—postmarked February 23, 2020—would be adjudicated under a different standard than those postmarked after February 24, 2020, USCIS's decision to reject those applications through the use of the lockbox facility constitutes a final agency action with a practical binding effect on Plaintiffs' legal interests. *See EEOC*, 933 F.3d at 441. Therefore, legal consequences flow from the lockbox's rejections of Plaintiffs' applications. *See id.*

Finally, Plaintiffs have "no other adequate remed[ies]" in regard to their rejected applications. *See* § 704. USCIS argues that "Plaintiffs have another adequate remedy—pay the filing fees correctly[.]" Doc. 9, Defs.' Mot., 8. However, that remedy is inadequate because, as discussed, any applications filed after February 24, 2020, are subject to the new Public Charge rule. The Fifth Circuit has held that "the fact that judicial review is delayed by multiple steps of intermediary administrative review does not render the procedure inadequate so long as the agency review is not discretionary." *Hinojosa v. Horn*, 896 F.3d 305, 311 (5th Cir. 2018) (citation omitted). Here, however, there is no administrative review, discretionary or not, of lockbox rejections for improper forms of payment. *See* 8 C.F.R. § 103.2(a)(7)(iii). And if judicial review of the payment policy is precluded, the Court knows of no other process available to Plaintiffs to challenge the propriety of that policy or its implementation as to their applications.

To prevent judicial review of a lockbox rejection, the Court "would have to impute to Congress an intent to preclude judicial review of the legality of" a USCIS policy entirely. *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 63 (1993). Such a decision would run afoul of the "well-settled

presumption favoring interpretations of statutes that allow judicial review of administrative action." *Id.* (citing *McNary*, 498 U.S. at 496). Absent clear and convincing evidence of congressional intent to preclude judicial review, the Court will not find it is barred from reviewing USCIS's policy of rejecting applications containing mixed forms of payment. *See id.*

Accordingly, USCIS's rejections of Plaintiffs' applications by the lockbox facility are final agency actions over which the APA grants this Court jurisdiction.

B.      *Plaintiffs' Claims Are Ripe.*

USCIS additionally claims that this case should be dismissed because it is not ripe. Doc. 9, Defs.' Mot., 7. The Court disagrees.

Article III of the United States Constitution provides that federal courts have the power to decide only actual cases or controversies. U.S. Const. art. III, § 2. The doctrine of ripeness "originate[s] in Article III's 'case' or 'controversy' language," but is also "drawn from prudential reasons for refusing to exercise jurisdiction." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d, 710, 715 (5th Cir. 2012) (quotation marks omitted) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). The "basic rationale" of the doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]" *Id.* (quotation marks omitted) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (citations omitted). In determining ripeness, the Court must find that the issues are fit for judicial decision and that the parties will suffer hardship if the Court withholds consideration. *Id.* (quoting *Gardner*, 387 U.S. at 149). In general, a case is ripe "if any remaining questions are purely legal ones," but "is not ripe if further factual

development is required." *Id.* at 587 (citing *Thomas v. Union Carbite Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)).

As discussed, USCIS's decision to reject Plaintiffs' applications is fit for judicial review because it constitutes a final agency action from which legal consequences flow. *See EEOC*, 933 F.3d at 441. And the Court finds that withholding consideration of this case would cause hardship to Plaintiffs. Indeed, the Court rejects USCIS's argument that the dispute is "abstract and hypothetical" "because Plaintiff's applications 'may or may not be granted[.]'" Doc. 9, Defs.' Mot., 7 (quoting *Monk v. Huston*, 340 F.3d 279, 283 (5th Cir. 2003)). Contrary to USCIS's position, Plaintiffs' applications *were not* granted, and without the Court's consideration, Plaintiffs *are not* able to have their applications considered under the old Public Charge rule.

Plaintiffs conferred with their attorney and intentionally filed their applications on February 23, 2020, for the purpose of avoiding the application of the new Public Charge rule. Doc. 1, Compl., ¶ 32. This strategy was permitted by USCIS, which informed the public that it would only apply the new rule to applications postmarked on or after February 24, 2020. Doc. 1-11, Guidance, 2. Under the standards imposed by the new Public Charge rule, Plaintiffs claim, a favorable adjudication "is next to impossible for some individuals, such as Plaintiffs, who lack lawful immigration status in the United States and thus cannot easily obtain certain types of documents." Doc. 1, Compl., ¶ 22. For example, Plaintiffs allege that Benitez and Nieto cannot "obtain a credit report, nor can they obtain evidence of significant financial resources" in order to prove by a preponderance of the evidence that they will not be a public charge. *Id.* "The Supreme Court has found hardship to inhere in . . . practical harms on the interests advanced by the party . . ." *Greenstein*, 691 F.3d at 715. And the rejection of Plaintiffs' applications for improper forms of payment affects their interests in the

application of the old Public Charge rule. Therefore, Plaintiffs have shown that they will endure hardship absent court consideration. *See Council of New Orleans*, 833 F.2d at 586.

Finally, no more factual development is needed in this case. "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Monk*, 340 F.3d at 282 (quotation marks omitted). The facts of this case are largely undisputed. It is undisputed that Plaintiffs' initial applications would have been subjected to the old Public Charge rule if they had not been rejected for improper forms of payment. It is also undisputed that they were indeed rejected based on the forms of payment. Finally, it is undisputed that the old Public Charge rule will not apply to any new applications. The only remaining questions involve legal determinations of whether the USCIS's policy of rejecting applications on the basis of payment method is lawful. Accordingly, this case is ripe for review, and the Court **DENIES** Defendants' motion to dismiss.

## IV.

## CONCLUSION

For the reasons stated above, the Court has jurisdiction over this case, and the case is ripe. Accordingly, the Court **DENIES** Defendants' motion to dismiss (Doc. 9).

**SO ORDERED.**

**SIGNED: June 1, 2021.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE